UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 10-5887-VBF(AJWx)**              Dated: **July 20, 2011**

Title:   Mark Henning -v- Orient Paper, Inc., et al.

_____

PRESENT:  HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

         Joseph Remigio                    None Present
         Courtroom Deputy                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

         None Present                      None Present

**PROCEEDINGS (IN CHAMBERS):**      **COURT ORDER REGARDING DEFENDANTS'
                                    MOTION TO DISMISS PLAINTIFFS' AMENDED
                                    COMPLAINT [DKT. 33]**

        Pursuant to Rule 78 of the Federal Rules of Civil Procedure and
Local Rule 7-15, the Court finds that this matter is appropriate for
decision without oral argument.  **The hearing set for this Motion on July
25, 2011 at 1:30 p.m. is hereby VACATED, and the matter is taken off
calendar.**

**I.   RULING**

        The Court has received Defendants' Motion to Dismiss Plaintiffs'
Amended Complaint ("Defs. Mtn.") (dkt. 33), Plaintiffs' Opposition to
Defendants' Motion to Dismiss ("Plts. Opp.") (dkt. 36), Defendants' Reply
Memorandum Supporting Defendants' Motion to Dismiss ("Defs. Rep.") (dkt.
40), and related documents.

        For the reasons stated herein, the Court **DENIES** Defendants' Motion
to Dismiss Plaintiffs' Amended Complaint, as Defendants have
insufficiently shown that Plaintiffs have not met their burden under the
Private Securities Litigation Reform Act ("PSLRA") or Rule 9(b).  To the
contrary, Plaintiffs have sufficiently pled securities fraud with

MINUTES FORM 90                      Initials of Deputy Clerk    __jre__
CIVIL - GEN

-1-

particularity and created the strong inference of scienter, as required by the PSLRA.

## II.  BACKGROUND

According to Plaintiffs, during the class period between March 27, 2009 and August 13, 2010 (the "Class Period"), Plaintiffs purchased the publicly traded common stock of Defendant Orient Paper, Inc. ("ONP"), a producer and distributor of paper products including corrugated paper, offset printing paper, and writing paper.  Am. Compl. (dkt. 31, at 2-3)

ONP is a holding company that conducts business through an operating entity in China known as Hebei Baoding Orient Paper Milling Company Limited ("HBOP"), over which ONP's subsidiary, the company through which it acts, has an 80% contractual right.  During the class period, ONP's common stock was actively traded on the NYSE AMEX under a ticker with the same letters, "ONP."  The Class period begins on March 27, 2009 because that is when ONP issued its fiscal 2008 annual report on Form 10-K containing allegedly false and misleading financial statements.  (dkt. 31 at 5)

Defendant Zhenyong Liu was ONP's CEO and Chairman of the Board of Directors and held between 34.69% and 34.37% of ONP's stock at all times during the relevant period.  Defendants Jing Hao and Winston Yen were ONP's CFO during the Class Period.  Defendant Drew Bernstein was an ONP director at the time it filed its 2009 10-K and served on ONP's audit committee.  Defendant Dahong Zhou was ONP's Secretary and Executive Manager of HBOP, with day-to-day control and responsibility for HBOP's operations.  Finally Defendant Davis Accounting Group, P.C. and its principal, Edwin Reece Davis, audited ONP's books in 2008 and certified the 2007 and 2008 financial statements contained in the 2008 and 2009 10-K annual reports filed with the SEC.  (dkt. 31 at 5-6)

Plaintiffs claim that ONP's 2008 and 2009 reports on Form 10-K did not disclose material related party transactions between Orient Paper and its main supplier, which allegedly was 70% owned and controlled by Defendant CEO Zhenyong Liu, and included false and misleading financial statements audited by a disbarred and, hence, unlicensed auditor, Defendant Davis Accounting Group ("DAG").  They further claim that the 2008 10-K materially misstated expenditures and revenue, materially misstated ONP's profits, and failed to disclose, as required by SEC regulations, unusual or infrequent events that reduced ONP's general expenses.  (dkt. 31 at 9-24, 26-27)

MINUTES FORM 90                              Initials of Deputy Clerk    ___jre___
CIVIL - GEN

When an independent industry analyst and research firm known as Muddy Waters issued a report on ONP on June 28, 2011, bringing to light various alleged frauds, ONP's stock price declined sharply from its $8.33 per share closing price on June 28, 2010 to $4.11 per share on July 1, 2010.  ONP responded to the Muddy Waters report by denying the allegations contained therein, which had the effect of temporarily increasing and stabilizing the price of ONP's stock.  (dkt. 31 at 27-28)

Muddy Waters and another analyst outfit continued to issue successive reports on ONP's alleged frauds, which ONP repeatedly denied and attempted to disprove, until mid-August.  During that period, ONP's stock vacillated between a range of approximately $7 per share to approximately $4 per share, closing at $4.27 per share on August 12, 2010.  Ultimately, ONP, through its audit committee, conducted an internal investigation into the claimed frauds and hired two outside firms to assist it with those efforts.  Though the investigation concluded favorably to ONP, neither outside firm issued any signed statement attesting to the tasks they had performed in connection with the audit committee's work.  (dkt. 31 at 28-31)

## III.  LEGAL STANDARD

To state a claim for securities fraud under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, Plaintiffs must plead particularized facts demonstrating "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the pleading standards are heightened.

The PSLRA was enacted to prevent the "routine filing of lawsuits against issuers of securities ... with only faint hope that the discovery process might lead eventually to some plausible cause of action ...." 1995 U.S.C.C.A.N. at 730.  A complaint alleging securities fraud under the PSLRA must meet a heightened pleading standard under both Fed. R. Civ. P. 9(b) and the PSLRA.  Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Thus, a complaint for securities fraud must specify, "the who, what, when, where and how: the first paragraph of any newspaper story."  *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 998 (9th Cir. 1999) (quoting the same).  The PSLRA requires that any securities fraud claim "[s]pecify

each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. ... [And] with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. Section 78u-4(b)(1), (b)(2).

Prior to the passage of the PSLRA, the Ninth Circuit adopted a group pleading doctrine that allowed plaintiffs to attribute allegedly misleading statements not only to the issuer but also collectively to all corporate officers and directors named as individual defendants.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987). However, following the passage of the PSLRA and increasingly, courts, including the Ninth Circuit, have cast doubt on this doctrine.  *See, e.g., Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("the PSLRA requires [the plaintiff] to plead scienter with respect to those individuals who actually made the false statements..."); *In re Lockheed Martin Corp. Securities Litigation*, 272 F. Supp. 2d 928, 936 (C.D. Cal. 2002) ("Under no circumstances does the group-published information doctrine relieve plaintiffs of their burden to plead scienter under [the PSLRA]"); *In re New Century,* 568 F. Supp. 2d 1206, 1223 (C.D. Cal. 2008) ("the Court holds that group pleading is no longer viable under the PSLRA."); *see also Teachers' Retirement System of La. v. Hunter,* 477 F.3d 162, 184 (4th Cir. 2007) ("a plaintiff must allege facts that support a strong inference that each defendant acted with at least recklessness in making false statements"); *Southland Securities Corp. v.* INSpire Ins. Solutions, Inc., 365 F.3d 353, 365 (5th Cir. 2004) ("The 'group pleading' doctrine conflicts with the scienter requirement of the PSLRA....").

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007), the Supreme Court laid out three prescriptions for courts dealing with a motion to dismiss a Rule 10b-5 securities action.  *Id.* at 322-24. First, this court, as it would ordinarily, must accept all of the factual allegations in the complaint as true.  Second, the complaint must be considered in its entirety, along with matters of public record that are susceptible to judicial notice.  Third, the Supreme Court has made it clear that "a court must consider [all] plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  *Id.* at 323-24.

Within the Ninth Circuit, mere motive and opportunity to commit fraud, without more, does not suffice to meet the strong inference of

MINUTES FORM 90                          Initials of Deputy Clerk    ___jre___
CIVIL - GEN

scienter requirement.  Instead, the plaintiff must make a strong showing
that the defendant acted in at least a severely reckless fashion.  *See
DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th
Cir. 2002).

Finally, the PSLRA requires the plaintiff to prove "that the act or
omission of the defendant alleged to have violated this chapter caused
the loss for which the plaintiff seeks to recover damages."  15 U.S.C.
Section 78u-4(b)(4).

If a securities violation is established, "Section 20(a) provides
joint and several liability for controlling persons who aid and abet
violations of the Securities Exchange Act of 1934 absent a finding of
good faith and lack of inducement."  *No. 84 Employer-Teamster Joint
Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920,
945 (9th Cir. 2003).

## IV.  ANALYSIS

### A.  Defendants' Argument and Analysis

Defendants argue that Plaintiffs do not meet the heightened pleading
requirements of the PSLRA by failing to allege actual material
misstatements or omissions with particularity, by failing to make
allegations that give rise to a strong inference of scienter, and by
failing to adequately plead loss causation.

Regarding the first claim, Plaintiffs' failure to plead fraud with
particularity, Defendants' best argument relates to ONP's general,
selling, and administrative expenses (the "GSA expenses").  Defendants
argue that Plaintiffs fail to allege particularized facts supporting
their contention that the company's GSA expenses were materially
misleading when: (a) their own Amended Complaint asserts both the
correctly reported figure for 2007 in one paragraph and an entirely
different one in the next and (b) for 2008, they fail to note who they
believe was responsible for calculating the figure, the reason they
believe existed for an adjustment as well as whether it was valid, and
why an expense representing 0.6% of the Company's overall expenses is
material in any event.  Defs. Mtn. at 23-24.

However, Defendants ultimately fail to make a sufficient showing
that Plaintiffs failed to meet their pleading burden.  First, Defendants
claim that Plaintiffs' allegations regarding the company's former auditor
are factually untrue——that the Public Company Accounting Oversight Board
("PCAOB") never disbarred or revoked DAG's license as alleged.  Defs.

MINUTES FORM 90                              Initials of Deputy Clerk  <u>jre</u>
CIVIL - GEN

Mtn. at 17-18.  The reality appears otherwise.  Plaintiffs submitted a Request for Judicial Notice on July 18, 2011 (dkt. 49) containing a government agency report from the PCAOB that evidenced the revocation of DAG's license on March 29, 2011, two months before Defendants filed their Reply in Support of their Motion to Dismiss in which they failed to acknowledge this fact.

Second, Defendants argue that an independent investigation determined that there was no evidentiary basis to question ONP's reported revenues and customers following the Muddy Waters report and the uncovering of the alleged frauds.  Defs. Mtn. at 19.  However, this investigation was conducted by ONP's own audit committee, with no public or signed statement by any of the outside firms ONP hired to assist it in its efforts.  The truth of the Muddy Waters report and the audit committee's conclusions is a factual dispute not appropriate for resolution at this stage.

Third, Defendants claim that Plaintiffs fail to allege particularized facts supporting their contention that the company's reported sales were materially false or misleading—given that Plaintiffs have relied on allegedly ambiguous credit reports and, according to Defendants, draw conclusions from those reports rather than set out facts establishing falsely reported sales.  Defs. Mtn. at 19-22.  However, the underlying truth of the credit reports on which Plaintiffs rely are a factual dispute inappropriate for determination on a motion to dismiss.

And fourth, Defendants argue that Plaintiffs mistakenly allege concealment of material related party transactions with ONP's supplier, Dongfang Trading, when the related party—ONP's CEO and chairman, Defendant Liu—sold his 70% stake in 2004, years before the alleged concealment.  Defs. Mtn. at 22.  However, this is another factual dispute, as Plaintiffs contend, based on Chinese state regulatory filings, that Defendant Liu increased his stake in Dongfang Trading in 2006 and thus could not have sold his entire interest in 2004.

Regarding Defendants' second claim, Plaintiffs' failure to make allegations giving rise to a strong inference of scienter, Defendants claim their signatures on SEC filings do not, without specific factual allegations that each of the Defendants who signed the documents knew they contained misstatements, give rise to the strong inference of scienter necessary to meet the heightened PSLRA requirements.  Defs. Mtn. at 27-28; *see In re Hansen Natural*, 527 F. Supp. 2d 1142, 1159-60 (C.D. Cal 2007).  In addition, Defendants argue that their corporate positions alone do not give rise to a strong inference of scienter without facts establishing the requisite knowledge of fraud.  Defs. Mtn. at 28-29; *see In re Oak Tech. Sec. Litig.*, 1997 WL 448168, at *11 (N.D. Cal. Aug. 1,

1997); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d
Cir. 2006).

     Although Defendants make headway with their arguments, they
ultimately fall short.  Defendants' failure to sell their stock and their
voluntary decision to commence an independent investigation of themselves
does appear, at first glance, to negate any inference of scienter, since
a personal benefit is needed to bolster such a finding.  Defs. Mtn. at
25-27; *see In re Wet Seal, Inc. Secs. Litig.*, 518 F. Supp. 2d 1148, 1177-
78 (C.D. Cal. 2007).  However, Plaintiffs allege that the related party
nature of the transactions between ONP and its supplier, Dongfang
Trading--of which Defendant CEO Liu allegedly maintained a 70% interest
through the Class Period--created an indirect benefit to Defendants that
does, in fact, create a strong inference of scienter.  Furthermore, if
the Muddy Waters report is true and the audit committee did, as the
Plaintiffs argue, attempt to whitewash Defendants' participation in the
alleged frauds—-a determination inappropriate on a motion to dismiss but
relevant for meeting the scienter requirement under the PSLRA--then the
internal investigation Defendants commenced does not negate the strong
inference of scienter, since it provided Defendants with the very benefit
they seek to disclaim.

**B.   Plaintiffs' Opposition and Analysis**

     Plaintiffs allege that Defendants made four categories of materially
false statements with the requisite scienter that caused the loss for
which they suffered.  First, Plaintiffs claim that Defendants omitted
material related party transactions—-specifically that Defendant CEO
Zhenyong Liu owned 70% of Dongfang Trading, ONP's main supplier, which
received $90 million in related party payments from ONP—-that they were
required to disclose in accordance with SEC rules but did not.  Plts.
Opp. at 13-17.  In their Amended Complaint, Plaintiffs contend that the
Chinese state regulatory filings for Dongfang Trading indicate that it
was created on August 2, 2001 with Defendant CEO Zhenyong Liu and an ONP
director as the sole shareholders.  On June 12, 2006, Plaintiffs allege
that Defendant Liu increased his capital contribution as a shareholder of
Dongfang Trading from RMB 0.35 million to RMB 3.5 million and continued
to own at least 70% of the company.  Am. Compl. ¶ 54.  They further argue
that this fact makes it impossible for Defendant Liu to have transferred
away his interest in Dongfang Trading in 2004, as Defendants claim based
on the audit committee's findings in the wake of the Muddy Waters report.
Plts. Opp. at 15-17.

     Second, Plaintiffs accuse Defendants of falsely claiming that ONP's
2008 financial results were audited when Defendant DAG no longer
constituted a registered and approved auditor.  Plts. Opp. at 17-19.

MINUTES FORM 90                              Initials of Deputy Clerk    <u>jre</u>
CIVIL - GEN

Though Plaintiffs mistakenly claimed in their amended complaint that DAG had been disbarred by the PCAOB instead of the state of Utah when the reverse was true at the time (*see* dkt. 36 at 13, n. 14), a Request for Judicial Notice in Opposition to Defendants' Motion to Dismiss (dkt. 49) filed on July 18, 2011 included a government agency report indicating that the PCAOB permanently disbarred DAG and its principal, Defendant Edwin Reece Davis.

Third, Plaintiffs argue——after having hired its own investigator for this purpose, ordered credit reports from a Chinese credit agency, and relied on an independent investigation and subsequent article released to the public by a firm known as Muddy Waters——that Defendants materially overstated ONP's revenue from its ten largest customers in its 10-K. Plts. Opp. at 19-21.  Citing the three sources on which they rely, Plaintiffs claim that seven of these ten largest customers could not have purchased goods in the amounts stated within ONP's financial statements because they did not have sufficient operations to consume the amounts stated or because the sources they relied upon confirmed and agreed that they did not exist.  Plts. Opp. at 20.  These allegations are stated with sufficient particularity.

Plaintiffs also sufficiently establish scienter and correctly cite *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) for the proposition that "a series of less precise allegations [may] be read together to meet the PSLRA requirement, the prior holdings of *Silicon Graphics* [relied upon by Defendants] ... notwithstanding.  Vague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter."  *Id.* at 784; *see* Plts. Opp. at 23-24.   In sum, this Court must not "scrutinize each allegation in isolation" but instead must "assess all the allegations holistically."  *Tellabs*, 551 U.S. at 325.  The Court cannot "close [its] eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective."  *South Ferry LP*, 542 U.S. at 784.

First, Plaintiffs argue that the "simplicity and obviousness" of Defendants' related party transactions with Dongfang Trading give rise to a strong inference of scienter.  *See In re Medicis Pharmaceutical Corp. Sec. Litig.*, 2010 WL 3154863 *5 (D. Ariz. Sep. 30, 2010) (holding the same with respect to the failure to follow a simple and obvious accounting rule).  If Dongfang Trading, as Plaintiffs allege, remained under the ownership and control of Defendant Liu, the $90 million in alleged related party payments to ONP's chief supplier are obvious material omissions.  *See* Plts. Opp. at 24-25.  Though Defendants claim that their failure to sell their stock in ONP negates any inference of

MINUTES FORM 90                          Initials of Deputy Clerk ____jre____
CIVIL - GEN

scienter since they derived no benefit from maintaining their shares, Plaintiffs argue that Defendants did engage in a sale of stock but simply concealed that sale by benefitting in a different way.  *See Id.*; *In re Wet Seal, Inc. Secs. Litig.*, 518 F. Supp. 2d 1148, 1177-78 (C.D. Cal. 2007) (a benefit received bolsters a finding of a strong inference of scienter, an absence of a benefit negates it).  Plaintiffs point to the June 25, 2009 sale by ONP's supplier, Dongfang Trading——the subject of dispute as to whether Defendant CEO Liu continued to own 70% of the company and thereby received the benefit of related party transactions——of 2,000,000 shares of its stake in ONP for an aggregate price of $750,000, in exchange for a cash inducement of $500,000 from ONP.  Plts. Opp. at 24-25.

Second, Plaintiffs dispute the investigation Defendants undertook to absolve ONP of fraud as an attempt to whitewash their participation in it, given that no public statement was made upon the conclusion of the investigation by any of the outside firms hired by ONP's audit committee. Plts. Opp. at 27-28.  Moreover, Plaintiffs contend that the press releases issued to reverse the slide in ONP's share price were issued by ONP itself, not by any outside or wholly independent entity, and lacked sufficient detail to explain or refute the material misstatements and omissions that had come to light.  *Id.*  Plaintiffs further argue that regardless of whether they sufficiently establish a motive, a very recent Supreme Court case, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011) stands for the proposition that "The absence of a motive allegation, though relevant, is not dispositive [on a motion to dismiss]."

Finally, regarding loss causation, Plaintiffs argue that the Muddy Waters report, whatever Defendants may claim to the contrary, is enough to satisfy loss causation and that the report's statements relate to falsity, not loss causation, which is a fact question not suitable for resolution on a motion to dismiss.  Plts. Opp. at 28-30; *see In re Gilead Sciences Secs. Litig.*, 536 F.3d 1049, 1056 (9th Cir. 2008) (supporting the plaintiff's position that it need only plead a specific economic loss tied to a revelation that a particular misstatement is false to establish loss causation).

### C.   Defendants' Reply and Analysis

Defendants' Reply rests on three primary arguments.  First Defendants contend that Plaintiffs fail to allege that any Defendant knowingly made a false statement.  Specifically, Defendants claim that allegations regarding DAG, ONP's former auditor, were wrong because DAG was never disbarred nor had its license revoked.  Defs. Rep. at 6-8.

MINUTES FORM 90                              Initials of Deputy Clerk   ___jre___
CIVIL - GEN

However, as already stated, Plaintiffs submitted a Request for Judicial
Notice of a March 29, 2011 PCAOB decision (dkt. 49 ex. 1) upon which DAG
and Defendant Edwin Reece Davis were, in fact, permanently disbarred.
Defendants also argue that purchases from ONP's supplier, Dongfang
Trading were not related party transactions because Defendant CEO
Zhenyong Liu sold his interest in 2004.  Defs. Rep. at 8-10.  However,
whether Defendant Liu did so is a factual dispute, since Plaintiffs
allege with sufficient particularity that he increased his stake in
Dongfang Trading in 2006.  Finally in connection with knowingly making
any false statement, Defendants contend that Plaintiffs do not meet the
heightened pleading standards of the PSLRA with respect to ONP's alleged
irregularities in its recognition of revenue from its customers.  Defs.
Rep. at 10-12.  However, here Plaintiffs contend that some of these
customers do not exist at all; thus, the amount by which revenues and
earnings allegedly were overstated is obvious, at least with respect to
them.

   Defendants' second argument is that Plaintiffs do not meet the
strong scienter requirement with respect to any Defendant because
Plaintiffs fail to establish a plausible motive and fail to explain the
knowledge or recklessness of each Defendant in the alleged fraud at
issue.  Defs. Rep. at 13-15.  However, Plaintiffs have sufficiently
established scienter with respect to each of the Defendants.  Defendant
DAG was, in fact, disbarred by the PCAOB, and Plaintiffs advance the
self-serving nature of Defendants' internal investigation following the
Muddy Waters reports, given that Defendants' outside counsel and advisor
failed to publish any statement setting forth their own, independent
conclusions.  In addition, though Defendants may not have sold their
stock in ONP and profited directly from the alleged fraud, a question
remains as to whether Defendant Liu did, in fact, control ONP's chief
supplier, Dongfang Trading, and thereby received the benefit of related
party payments.

   Finally Defendants argue that Plaintiffs fail to plead loss
causation because ONP's stock price was not caused by any action of any
Defendant but instead by the publication of unsubstantiated rumors by
Muddy Waters, which the Defendants launched an internal investigation to
disprove.  Defs. Rep. at 15-16.  However, as already explained, the
publication of the alleged frauds caused the loss from which Plaintiffs
suffer.

   **D.   Ruling**

   Plaintiffs adequately plead material misrepresentations and
omissions of fact with particularity, at least with respect to the 2008

MINUTES FORM 90                          Initials of Deputy Clerk    jre
CIVIL - GEN

10-K issued by Defendants and audited by the disbarred Defendant DAG, the questionable internal investigation Defendants conducted of themselves, and the alleged ongoing nature of Defendant CEO Zhenyong Liu's relationship and 70% ownership of ONP's main supplier, Dongfang Trading, during the Class Period.  Viewed holistically, as this Court must, the inference of scienter advanced by the Plaintiffs is "at least as compelling as any opposing inference one could draw from the facts alleged."  *Matrixx Initiatives*, 131 S. Ct. at 1324.  Finally, Plaintiffs' losses stem from the Muddy Waters report's revelation of these alleged frauds.  In sum, because Plaintiffs adequately plead a securities violation with particularity under Section 10(b) and the PSLRA and sufficiently plead a Section 20(a) control violation as well, Plaintiffs Amended Complaint is sufficient to withstand Defendant's Motion to Dismiss.

For these reasons, the Court **DENIES** Defendants' Motion to Dismiss. Defendants have insufficiently shown that Plaintiffs failed to meet their pleading requirements under the PSLRA.

**IT IS SO ORDERED.**